# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LABRONE CARLOS HARRIS,<br>　　　　　　Petitioner,<br>v.<br>DIRECTOR OF CORRECTIONS,<br>　　　　　　Respondent. | Case No.: 18cv0274 MMA (RBM)<br><br>**(1) REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS; AND**<br><br>**(2) ORDER DENYING REQUEST FOR EVIDENTIARY HEARING.** |

## I.　INTRODUCTION

Petitioner Labrone Carlos Harris ("Petitioner" or "Harris"), a state prisoner proceeding pro se, has filed a First Amended Petition ("Petition") for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in case number SCD 262893. (Am. Pet. at 1, ECF No. 4.)[1] In the Petition, Harris also requests an evidentiary hearing. (*Id.* at 7.) The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the lodgments, and all the supporting documents submitted by both parties. For

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

1

the reasons discussed below, the Court **DENIES** the request for evidentiary hearing and **RECOMMENDS** the Petition be **DENIED**.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> Harris and his wife, C.R.H., lived in an apartment on Alvarado Road in San Diego (Alvarado apartments). On June 26, 2015, C.R.H. and Harris were in the parking lot of their building when Harris hit C.R.H. in the face. C.R.H. suffered fractures near the eye socket and the left wall of her maxillary sinus. She bled profusely from a cut over her left eyebrow. Her cheekbone was bruised and swollen. Harris was arrested and jailed pending trial.
>
> On July 7, 2015, Harris telephoned C.R.H. from jail using another inmate's PIN code (July 7 conversation). They talked about various topics, including Harris' arrest for a probation violation. C.R.H. recounted a conversation she had with Harris' sister. C.R.H. said she told her sister-in-law, "These charges are BS. It's not like I'm going to go and say that again, obviously." Harris asked if C.R.H. had noticed he had used someone else's name. He asked her what she was going to do or say and told her, "You need to call, like, and change your story." Harris said they could "get this dropped." C.R.H. said she was aware of that.
>
> The trial took place over six days in November 2015. A resident of the Alvarado apartments (resident) testified that at approximately 1:00 p.m. on June 26, 2015, he and his girlfriend (girlfriend) were in the parking lot of the complex. Just as he was getting into his car, he saw a lady (C.R.H.) [footnote omitted] and the defendant talking. When C.R.H. handed the defendant a piece of paper, he hit her. The resident said, "[I]t was like a man hitting another man. It was a little scary." The defendant got into his car and drove off.

The resident and his girlfriend went over to C.R.H., who was yelling, "Help me, help me." C.R.H. was on the ground. She was holding her head and bleeding from her eye. C.R.H. said the man who hit her was her husband. Someone telephoned 911.

The girlfriend testified she and the resident were walking to their car. She heard a sound and saw a man leave the scene. C.R.H. was on the ground, screaming, crying and bleeding. She was frantic. There was blood gushing from her face down her shirt. The girlfriend heard C.R.H. identify her husband as the assailant.

A police officer responded to the 911 call at approximately 1:20 p.m. He was directed to go to Alvarado Hospital. When he arrived, C.R.H. was fearful and crying. She said her husband hit her in the face with his right fist. C.R.H. recounted an argument she and Harris had the night before he hit her. Harris saw a text on C.R.H.'s cell phone he believed was from another man. Harris became "enraged with anger" and left the apartment. When C.R.H. picked him up the next morning, Harris was verbally abusive and slapped her in the back of her head. He threatened to "knock her the fuck out" and said he was going to "knock her out" when they got home. C.R.H. stopped at a Denny's and ran out of the car. Harris threw a water bottle at her and hit her in the leg. Harris left on foot and C.R.H. drove home. He telephoned and said he was outside the apartment and wanted his clothes. C.R.H. packed his clothes and gave them to him. Harris said he could not leave without his court documents, which were in the trunk of C.R.H.'s car. They went to her car. She retrieved the documents and handed them to him. Harris drew back his right arm and hit C.R.H. in the face.

An emergency room nurse testified C.R.H. had a large cut to her left eyebrow. C.R.H. said her husband hit her in the face and knocked her out.

C.R.H. testified that shortly after midnight on June 26, 2015, she received a text message from a girlfriend. C.R.H. made plans to hang out with her girlfriend and a male friend. Harris became upset and left the apartment at approximately 1:00 a.m. When she picked him up the next morning, Harris was intoxicated and upset. He told C.R.H. he wanted to pack his things and leave. C.R.H. said she became angry. She pulled into a parking lot at Denny's. Harris walked away while she was yelling at him.

C.R.H. testified she drove home to lock Harris out of the house. He telephoned her and said he wanted his clothes. C.R.H. packed his clothes and gave them to him. Harris said he needed another basket of clothes and his papers from her car. She met him in the parking lot and gave him a basket of clothes with his papers on top of it. C.R.H. grabbed his arm and asked him not to leave. She hit him in the face. He turned away and she hit him four to five times in the back of his head. Harris used the laundry basket to push her away and she fell to the ground. C.R.H. was crying and bleeding. C.R.H. telephoned 911 and told the dispatcher that she and her husband were fighting and he hit her.

The prosecution played the 911 recordings for the jury. C.R.H. told the dispatcher, "[M]y husband just beat the shit out of me. I'm gushing blood, please come help me. [¶] . . . [¶] He punched me, I'm bleeding everywhere." C.R.H. said her sister-in-law was driving her to the hospital.

On cross-examination, C.R.H. testified she told the dispatcher that Harris had hit her because she wanted to get him in trouble. He was driving another girl's car. Harris never punched her. The incident was her fault. C.R.H. denied that Harris ever told her what to say or asked her to change her story.

The prosecution played a portion of the July 7 conversation between C.R.H. and Harris. [Footnote omitted.] C.R.H. acknowledged the transcript of the conversation showed that Harris had asked her to change her story. She testified she did not change anything. C.R.H. said she had had other conversations with Harris in which she told him she was going to come to court and tell the truth, and she did tell the truth.

The jury found the defendant guilty of the crimes of corporeal injury to a spouse and assault by means likely to produce great bodily injury. The jury sustained allegations of great bodily injury on each count. At defendant's sentencing hearing, C.R.H. asked the court not to give Harris a long prison term, saying he needed help with his alcoholism. She told the court, "He really does mess up things when he's under the influence of anything." C.R.H. said the defendant's actions had traumatized her and ruined her life.

(Lodgment No. 11, ECF No. 10-11 at 2-6.)

/ / /

## III. PROCEDURAL BACKGROUND

On August 4, 2015, the San Diego District Attorney filed a complaint charging Harris with corporal injury to a spouse (Cal. Penal Code § 273.5(a)) and assault by means likely to produce great bodily injury (Cal. Penal Code § 245(a)(4)). (Lodgment No. 1, ECF No. 10-1 at 5.) It was further alleged that Harris inflicted great bodily injury (Cal Penal Code § 12022.7(e)) as to both counts. (Lodgment No. 1, ECF No. 10-1 at 6.) It was also alleged that Harris had suffered a serious prior felony (Cal. Penal Code § 667(a)(1), 668 and 1192.7(c)) and a strike prior (Cal. Penal Code § 667(b)-(i), 668, 1170.12). (Lodgment No. 1, ECF No. 10-1 at 5-8.)

On November 23, 2015, a jury found Petitioner guilty of both counts. The jury further made true findings that Harris inflicted great bodily injury as to both counts. (*Id.* at 155, 159, 161; *see also* Lodgment No. 4, ECF No. 10-4 at 492-93.) Harris admitted the truth of the prior conviction allegations. (Lodgment No. 1, ECF No. 10-1 at 158.) On February 5, 2016, the trial court sentenced Harris to 13 years in prison.[2] (Lodgment No. 1, ECF No. 10-1 at 163; *see also* Lodgment No. 6, ECF No. 10-6 at 41.)

Petitioner appealed his conviction to the California Court of Appeal. (*See* Lodgment No. 8, ECF No. 10-8.) He argued his due process rights were violated when the trial court precluded the defense from admitting a portion of a recorded jailhouse phone call between Harris and C.R.H. (*See id.* at 34-7.) On June 27, 2017, the appellate court affirmed Harris's conviction in an unpublished opinion. (Lodgment No. 11, ECF No. 10-11.) The court concluded that Harris had failed to "produce an adequate record to demonstrate trial court error" because the unredacted transcript of the phone conversation was not part of the appellate record. (*Id.* at 8.) The court further concluded that even assuming there was error, it was harmless. (*Id.* at 9-10.)

---

[2] The trial court sentenced Harris to the middle term of four years on count one, doubled to eight years due to the strike prior, plus a consecutive term of five years for the serious felony prior. The court struck the punishment for the great bodily injury enhancements pursuant to California Penal Code section 1385 and stayed the sentence on count two pursuant to California Penal Code section 654. (Lodgment No. 1, ECF No. 10-1 at 163-64; *see also* Lodgment No. 6, ECF No. 10-6 at 39-41.)

On August 7, 2017, Petitioner, represented by appellate counsel, filed a petition for review in the California Supreme Court. (Lodgment No. 12, ECF No. 10-12.) In it, Harris argued that the appellate court erred in failing to address the merits of his claim. He asserted that the record before the appellate court was adequate because it contained defense counsel's proffer to the trial court regarding the contents of the unredacted transcript. (*Id.* at 9-10.) On September 13, 2017, the California Supreme Court denied the petition without comment or citation. (Lodgment No. 13, ECF No. 10-13.)

On August 28, 2017, while his petition for review was pending before the California Supreme Court, Harris filed a *pro se* petition for writ of habeas corpus in the California Supreme Court. (Lodgment No. 14, ECF No. 10-14.) Harris argued his due process rights were violated by the failure to include the unredacted transcript of the July 7 phone call in the appellate record. (*Id.* at 3-4, 7.) The court denied the habeas petition without comment or citation on September 13, 2017. (Lodgment 15, ECF No. 10-15.)

Harris filed the instant federal petition for writ of habeas corpus in this Court on March 12, 2018.[3] (Am. Pet, ECF No. 4.) Respondent filed an Answer and Memorandum of Points and Authorities on June 19, 2018. (*See* ECF No. 7.) Petitioner did not file a Traverse.

## IV. SCOPE OF REVIEW

Harris's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

---

[3] Harris originally filed a petition for writ of habeas corpus in this Court on February 5, 2018. (ECF No. 1.) That petition was dismissed with leave to amend because Harris failed to sign the petition. (*See* ECF No. 3.)

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

# V. DISCUSSION

Harris raises two grounds for relief in his Petition. In his first claim, he argues that his due process rights were violated by the exclusion of "crucial parts of [the] trial record" from the record on appeal. He contends he was denied an adequate appeal as a result. (Am. Pet., ECF No. 4 at 6.) He also includes a reference to *Jackson v. Virginia*, 443 U.S. 307 (1979) and states that the "missing record. . . raises [an] inference as to the sufficiency of evidence question." (*Id.*) In his second claim, Harris contends the failure to include the unredacted phone call transcript defense counsel sought (and failed) to admit at trial from the record on appeal was a violation of his due process rights. (*Id.* at 7.) Respondent contends Petitioner is not entitled to relief because the state court's denial of the claims was neither contrary to, nor an unreasonable application of, clearly established law. (*See* Mem. P. & A. Supp. Answer, ECF No. 9-1 at 15-16.)

Because claims one and two are intertwined and overlapping, this Court will discuss them together. Petitioner raised the claims in his petition for writ of habeas corpus in the California Supreme Court. (Lodgment No. 14, EF No. 10-14.) The court denied the petition without comment or citation. (*See* Lodgment No. 15, ECF No. 10-15.) Accordingly, because there is no reasoned state court decision to which this court can defer, the court must conduct an independent review of the record to determine whether the state court's denial was contrary to, or an unreasonable application of, clearly established law. *See Himes*, 336 F.3d at 853.

*A. Background and State Court Proceedings*

At trial, C.R.H. had recanted her original story and testified that she had hit Harris, not the other way around. (Lodgment No 4, ECF No. 10-4 at 131-32, 134.) She stated she was injured when Harris "accidentally" shoved a laundry basket in her face and the sharp edge from a broken handle caused her injuries. (*Id.* at 134, 173-74.) The prosecutor impeached C.R.H. with statements she had made on the day of the offense to eyewitnesses, the 911 dispatcher, a nurse, and a police officer. (*Id.* at 142-46, 153-54, 156-64.) C.R.H. testified that she had made those statements because she was being

dramatic and wanted to get Harris in trouble. (*Id.* at 142-43.) She testified that Harris had never told her to change her story, and specifically that the two never discussed changing her story during the July 7, 2015 telephone call. (*Id.* at 192.)

The prosecution sought to impeach C.R.H.'s testimony with portions of the July 7 telephone conversation between Harris and C.R.H. in which Harris can be heard telling C.R.H. to change her story. (*Id.* at 189-90.) The portion of the jail call proposed by the prosecutor was introduced as follows:

> HARRIS: Did it – when I called you right now did the name say something different?
>
> C.R.H.: What?
>
> HARRIS: Was it a different name?
>
> C.R.H.: Yeah.
>
> HARRIS: Yea, that's why I called you from this one or uh just instead of mine.
>
> C.R.H.: Uh hmm.
>
> HARRIS: And so . . .whatha gonna do or say?
>
> C.R.H.: I'm not talking to her. I'm done.
>
> HARRIS: I'm talking, no I'm talking about . . . as far as this.
>
> C.R.H.: Oh. I don't know. I'm, I'm literally, like I haven't even been at home. I haven't even slept since Sunday. I'm, like, fuckin' like my life is ruined. Like I have nowhere to live. I have no job. I'm not. . . [unintelligible].
>
> HARRIS: [Unintelligible]. . .
>
> C.R.H.: . . .for fuckin' [unintelligible].
>
> HARRIS: Somebody's gonna call you and ask you stuff.

9
18cv0274 MMA (RBM)

|   |   |   |
|---|---|---|
| 1 | C.R.H.: | Okay. They can ask me all that they want. Like, what, what am I going to do, like obviously . . . |
| 2 | | |
| 3 | HARRIS: | What are you going to do? |
| 4 | C.R.H.: | . . . [unintelligible]. What? |
| 5 | | |
| 6 | HARRIS: | You need to call, like, and change your story. |
| 7 | | [Background noises] |
| 8 | HARRIS: | You know that, right? Or, you, you don't want to? |
| 9 | | |
| 10 | C.R.H.: | Yeah, I, tryin' to lie talk on this stupid phone. Just gonna make shit worse so. . . |
| 11 | | |
| 12 | HARRIS: | But just keep that in mind. |
| 13 | C.R.H.: | Clearly. |
| 14 | HARRIS: | Uh hmm. Yeah. So. Uh hmm. 'Cause if anything we can, we, we . . . we can get this dropped. Uh hmm. |
| 15 | | |
| 16 | C.R.H.: | Yeah. I'm aware of that. |
| 17 | | |
| 18 | HARRIS: | Yeah. |

(Lodgment No. 1, ECF No. 10-1 at 37-38; *see also* Lodgment No. 4, ECF No. 10-4 at 346.)

In response, defense counsel moved to admit another portion of the July 7 call where C.R.H. purportedly said, "these charges are bullshit," "none of this even happened," and "we should be able to get this dropped once we get in front of a judge." (*Id.* at 253-54, 256, 260.) Defense counsel argued these statements were admissible under California Evidence Code section 356[4] because they were on the same subject

---

[4] Section 356 states:

> Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when

matter as the conversation about C.R.H. changing her story. (*Id.* at 256-57, 259-61.) The prosecutor countered that the statements were a recitation of a previous conversation C.R.H. had with Harris's sister and thus involved a different subject. The trial judge reviewed the unredacted transcript of the phone call and concluded that section 356 did not require admission of the statements defense counsel sought to introduce, stating:

> It seems to me what [C.R.H.'s] talking about is what she told the sister, and that's – that's why I'm not letting it in. It's not about the conversation with him. [C.R.H.'s] repeating what she told her – what she told his sister. When [C.R.H.] uses defendant's name, 'Labrone and I have been talking all day,' she's not having a conversation with him. She's reciting what she told the sister, so it doesn't seem to be the same conversation, and I'm not going to let it in.

(*Id.* at 261.)

On direct appeal to the California Court of Appeal, Petitioner argued that the trial court erred in denying his motion to admit additional portions of the July 7 telephone conversation. The appellate court found that because the unredacted transcript was not part of the appellate record it could not review whether the trial court abused its discretion. Further, the appellate court concluded that even assuming the trial court erred, any such error was harmless. The appellate court stated, in relevant part:

> A trial court's determination of whether evidence is admissible under Evidence Code section 356 is reviewed for abuse of discretion. (*People v. Parrish* (2007) 152 Cal.App.4th 263, 274.)
>
> Evidence Code section 356 states: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also

---

a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence.

Cal. Evid. Code § 356.

be given in evidence."

"'In applying Evidence Code section 356 the courts do not draw narrow lines around the exact subject of inquiry. "In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have some bearing upon, or connection with, the admission or declaration in evidence. . . ." [Citations.]'" (*People v. Zapien* (1993) 4 Cal.4th 929, 959.) "Further, the jury is entitled to know the context in which the statements on direct examination were made." (*People v. Harris* (2005) 37 Cal.4th 310, 335.)

. . . .

The prosecution [also] gave an unredacted transcript of the July 7 conversation to the court, who reviewed it before denying the defense motion under Evidence Code section 356. The unredacted transcript is not in the appellate record. The appellant has the burden to produce an adequate record demonstrating trial court error. (*Baranchik v. Fizulich* (2017) 10 Cal.App.5th 1210, 1226.) Without the unredacted transcript, we cannot review whether the trial court abused its discretion in denying the defendant's motion to admit a portion of the July 7 conversation. Because the record is inadequate for appellate review, we presume the court ruled correctly. (*Id*., at p. 1227.)

Furthermore, in view of the overwhelming evidence supporting the verdict, error, if any, is harmless. A judgment will not be reversed due to the erroneous exclusion of evidence unless it appears, upon examining the entire cause, including the evidence, a miscarriage of justice has resulted. (Cal. Const., art. VI, § 13; Evid. Code, § 354.) A miscarriage of justice occurs only when the reviewing court is convinced it is reasonably probable a result more favorable to the appellant would have been reached absent the error. (*California Crane School, Inc. v. National Commission for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 24.)

Here, it is not reasonably probable a result more favorable to the appellant would have been reached absent the error. There is overwhelming evidence to show the appellant committed the crimes of corporal injury to spouse and assault by means likely to produce great bodily injury, and inflicted great bodily injury on the victim. A disinterested eyewitness

testified he saw Harris hit C.R.H. very hard in the face. He and another witness heard C.R.H. identify the assailant as her husband after she was assaulted. When C.R.H. telephoned 911, she said, "[M]y husband just beat the shit out of me. I'm gushing blood, please come help me. [¶] . . . [¶] He punched me, I'm bleeding everywhere.""

An emergency room nurse testified C.R.H. had a large cut to her left eyebrow. C.R.H. said her husband hit her in the face and knocked her out. The record shows that C.R.H. suffered fractures near the eye socket and to her maxillary sinus. She bled profusely from a cut over her left eyebrow, and her cheekbone was bruised and swollen.

The responding police officer said C.R.H. was fearful and crying when he met with her at the hospital shortly after the incident. C.R.H. told him that Harris had become "enraged with anger" and was still verbally abusive the following morning. When C.R.H. picked him up, Harris slapped her in the back of her head while she was driving. He threatened to "knock her the fuck out" and said he was going to "knock her out" when they got home. C.R.H. said she was frightened, stopped the car, and ran away from Harris. Later, Harris refused to leave the apartment without his court documents, which were in the trunk of C.R.H.'s car. C.R.H. told the police officer when she handed the court documents to Harris, he drew back his right arm and hit her in the face.

In view of the overwhelming evidence supporting the verdict, it is not reasonably probable that the jury, upon hearing C.R.H. tell the defendant she had told his sister "these charges are BS," would have returned a result more favorable to appellant. Accordingly, we affirm the judgment. (Cal. Const., art. VI, § 13; Evid. Code, § 354.)

(Lodgment No. 11, ECF No. 10-11 at 5-6, 8-10.)

### B. Merits

It is clearly established that a state must provide the indigent criminal defendant with "a record of sufficient completeness to permit proper consideration of (his) claims" in order to satisfy the constitutional guarantees of due process and equal protection. *Mayer v. City of Chicago*, 404 U.S. 189, 193-94 (1971) (citation and internal quotation marks omitted); *Britt v. North Carolina*, 404 U.S. 226, 227 (1971) ("there can be no doubt that the State must provide an indigent defendant with a transcript of prior

proceedings when that transcript is needed for an effective defense or appeal"); *see also Draper v. Washington*, 372 U.S. 487, 495 (1963). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer*, 404 U.S. at 194. Whether a transcript is needed for an effective defense or appeal depends on: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as the transcript." *Britt*, 404 U.S. at 433-34. The Ninth Circuit has held that the *Britt* criteria apply in evaluating a habeas petitioner's claim that the reconstruction of unrecorded portions of state trial court proceedings was inadequate for him to make an effective appeal. *See Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989).

Petitioner has the burden of establishing prejudice from the lack of a complete transcript in light of the alleged value of the transcript and the availability of alternatives that would fulfill the same functions. *Id.* at 648-49 (finding that the petitioner was not entitled to habeas relief because he had not shown prejudice by the absence of a complete transcript); *see Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) ("federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice"); *White v. State of Florida, Department of Corrections*, 939 F.2d 912, 914 (11th Cir. 1991) ("in a federal habeas corpus case brought by a state prisoner, the absence of a perfect transcript does not violate due process absent a showing of specific prejudice").

Here, while a copy of the unredacted transcript of the July 7 telephone call was not included in the record on appeal, the contents of the transcript were discussed at length on the record. (*See* Lodgment No. 4, ECF No. 10-4 at 253-61.) Defense counsel made it clear what statements he believed were relevant and admissible. He quoted portions of the transcript on the record. (*Id.* at 257-58.) Both defense counsel the prosecutor discussed the context of the statements on the record. (*Id.* at 255-60.) Finally, the trial judge explained his decision to exclude the statements on the record, referring in part to the context of the statements. (*Id.* at 261.)

1	First, Harris points to no clearly established U.S. Supreme Court precedent which
2	requires a state court to include *excluded* evidence in the appellate record. Without any
3	clearly established federal law from the Supreme Court, the state court's adjudication of
4	the claim cannot be said to be contrary to, or an unreasonable application of, such law.
5	*See Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see also Moses v. Payne*, 555 F.3d 742,
6	754 (9th Cir. 2009) ("[W]hen a Supreme Court decision does not 'squarely address[ ]' the
7	issue in th[e] case . . . it cannot be said, under AEDPA, there is 'clearly established'
8	Supreme Court precedent addressing the issue . . ., and so [a federal habeas court] must
9	defer to the state court's decision.")

10	In addition, Harris cannot establish he was prejudiced by the failure to include the
11	transcript in the record on appeal. As the state appellate court found, even if the trial
12	court had admitted the statements, the result of the trial would not have been different.
13	The defense had already presented testimony that C.R.H.'s original statements, made
14	immediately after the incident, were untrue. C.R.H. testified at trial that she had
15	fabricated the story about appellant punching her in the fact because she was angry and
16	wanted to get him in trouble. (Lodgment No. 4, ECF No. 10-4 at 143-46, 154-55, 167.)
17	She stated that she was the one who had hit Harris because she was afraid of getting
18	arrested and being deported. (*Id.* at 172, 186.) She told the jury that she finally wanted
19	to set the record straight and take responsibility for what happened. (*Id.* at 166.) Thus,
20	C.R.H. had ample opportunity to explain the inconsistencies with her story to the jury.
21	The portion of the unredacted transcript defense counsel sought to introduce, even when
22	viewed in a context most favorable to the defense,[5] was merely redundant of testimony
23	that was already presented to the jury.
24	Furthermore, C.H.R's testimony notwithstanding, the evidence against of Harris

---

[5] The prosecutor suggested that C.R.H. was telling Harris what she had told his sister. Defense counsel acknowledged that C.R.H. was discussing her conversation with Harris's sister but suggested that the conversation was "fluid" and it was possible to interpret the statements as C.R.H. claiming the charges were "B.S." (Lodgment No. 4, ECF No. 10-4 at 257-58.) As noted above, the trial judge concluded C.R.H. was merely relaying her conversation with Petitioner's sister. (*Id.* at 261.)

was overwhelming. An eyewitness, Cameron Stacy, testified that he saw Harris punch C.R.H. in the face. (Lodgment No. 4, ECF No. 10-4 at 75-78, 99-100.) Stacy stated that Harris hit C.R.H. "as hard as he would hit a man." He further testified that he never saw C.R.H. hit Harris and Harris never had a laundry basket in his hands. (*Id.* at 82, 84-85.) Stacy's girlfriend, who witnessed the immediate aftermath, testified that C.R.H. was bleeding profusely and kept repeating that her husband did this to her. (*Id.* at 211-12, 214.)

Stacy's testimony was consistent with what C.R.H. told others immediately after the incident. The emergency room nurse, for instance, testified that C.R.H. told her that Harris had punched her in the face. (*Id.* at 233, 236.) The interviewing officer also testified that C.R.H. said Harris had hit her in the face with his right fist. (*Id.* at 289.) She asked the officer for an emergency protective order against Harris. (*Id.* at 304.) In her 911 call she reported that "my husband just beat the shit out of me." She told the dispatcher that Harris had punched her with his fist and she was "bleeding everywhere." (Lodgment No. 1, ECF No. 10-1 at 30-32.) Dr. Matthew Cronin testified that C.R.H. suffered two fracture in her left cheek area and that her injuries were consistent with being punched in the face. (Lodgment No. 4, ECF No. 10-4 at 273-74, 278-79, 281-82.) Given the overwhelming evidence against Harris, the exclusion of the unredacted transcript from the appellate record did not prejudice Petitioner. *See Madera*, 885 F.2d at 648-49 (finding that the petitioner was not entitled to habeas relief because he had not shown prejudice by the absence of a complete transcript).

Lastly, Harris's claim that his due process rights under *Jackson v. Virginia*, 443 U.S. 307 (1979) were violated fails for the same reason. In *Jackson*, the Supreme Court held that the due process clause is violated "if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324; *see also Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005); *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam ). Under *Jackson*, a federal court must review the state court record and view the evidence in the "light most favorable to

the prosecution and all reasonable inferences that may be drawn from this evidence." *Juan H.*, 408 F.3d at 1276 (citing *Jackson*, 443 U.S. at 319). Here, a reasonable juror could have found Harris guilty beyond a reasonable doubt for the same reasons discussed above. There was overwhelming evidence presented at trial to establish that Harris had punched C.R.H. in the face. That evidence included testimony from eyewitnesses, medical professionals who treated C.R.H. right after the incident and police officers who interviewed C.R.H. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury's verdict.

In sum, having conducted an independent review of the record, this Court finds the state court's denial of the due process claims raised in grounds one and two of the Petition, was neither contrary to, nor an unreasonable application of, clearly established law. *See Himes*, 336 F.3d at 853; *see also* 28 U.S.C. §2254(d). The Court therefore **RECOMMENDS** the Petition be **DENIED.**

### C. *Request for Evidentiary Hearing*

Harris asks this Court to conduct an evidentiary hearing on his claims. (*See* Pet., ECF No. 4 at 7.) Petitioner does not, however, identify what evidence, if any, he intends to present. But presumably it would include a copy of the unredacted transcript of the July 7 telephone conversation.

Petitioner's request is foreclosed by the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011). There, the Supreme Court held that the district court should not have held an evidentiary hearing until after the Court determined that the petition survived review under section 2254(d). *Id.*; *see also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011). The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013). Here, Harris is not entitled to relief under §2254(d) for the reasons discussed above in section V(B) of this Report and Recommendation. As such, he is not entitled to an evidentiary hearing. *See Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("[A]n evidentiary hearing is pointless once

17

18cv0274 MMA (RBM)

the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted). Accordingly, Harris's request for an evidentiary hearing is **DENIED.**

## VI. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Michael M. Anello under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, the Court **DENIES** Petitioner's request for an evidentiary hearing.

In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **December 28, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **January 16, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: 12/4/18

HON. RUTH BERMUDEZ MONTENEGRO
**United States Magistrate Judge**